## Mayo & Jones vs. Cartwright, adm'r, et al.

1. Acquiescence: *Not implied by silence where there is constructive notice.* One who holds duly recorded incumbrances on land, is not bound to give notice to a subsequent purchaser, without actual notice, who erects valuable improvements, the record being constructive notice, no presumption of acquiescence can arise from the silence of the incumbrancer.

2. Limitations, Statute of: *In what cases not suspended during the war.* While this court will adhere to the late rulings that the statute of limitations was suspended during the war, it will not apply the doctrine to the case of a mere personal trust which could have been executed by the trustee without the intervention of a court. And where the trustee, upon a trust to secure indebtedness, with a power of sale upon default, neglected for more than seven years, embracing the time of the war, to execute his trust, the statute was not suspended as against one in the adverse possession of land which was the subject of the trust.

3. ——: *Effect of part payment on the rights of third persons.* Part payment of a debt will not arrest the statute of limitations as against a third person not in privity with the debtor or creditor.

APPEAL from *Monroe* Circuit Court in Chancery.

Hon. W. H. H. Clayton, Circuit Judge.

*Clark & Williams*, for appellants.

There can be no estoppel as to Jones. *Boggs* v. *Mercer*, 14 Cal., 279-366 ; *Green* v. *Pettyman*, 17 Cal., 401. There was on his part no negligence, n )r design to mislead. *Brown* v. *Wheeler*, 17 Con., 345 ; *Kinney* v. *Farnesworth*, id., 345 ; *Rangely* v. *Spring*, 21 Me., 130 ; *Cummings* v. *Webster*, 43 id., 192 ; *Preston* v. *Mann*, 25 Con., 118 ; *Whitenere* v. *Culver*, 8 Minn., 133 ; *Heath* v. *Derry Bank*, 44 N. H., 174 ; 29 Ga., 312 ; *Davidson* v.

*Young*, 38 Ill., 145; *Wilson* v. *Custro*, 31 Cal., 420; *Anderson* v. *Lyons*, 11 Allen (Mass.,) 349; *Hazelton* v. *Butchelder*, 44 N. H., 40; *Lawrence* v. *Brown*, 5 N. Y., (1 Seld.,) 394; *Jewett* v. *Miller*, 10 N. Y., (6 Seld.) 402; *Byers* v. *Farwell*, 9 Barb., N. Y., 615; *Hawley* v. *Griswold*, 42 id., 18; *Garlingham* v. *Whitwell*, 51 id., 208; *Brubaker* v. *Okeson*, 36 Pa. St., 519; *Diller* v. *Brubaker*, 52 id., 498; *Darrah* v. *Bryant*, 56 id., 69; *Williams* v. *Chandler*, 25 Tex., 4; *Hicks* v. *Crany*, 17 Vt., 449; and the person claiming the estoppel must have changed his position by reason of the acts. *Copeland* v. *Copeland*, 28 Me., 525; *Califf* v. *Hillhouse*, 3 Minn., 311; *Taylor* v. *Zepp*, 14 Mo., 482; *Martin* v. *Angell*, 7 Barb. (N. Y.,) 407; *Otis* v. *Sill*, 8 id., 102; *Carpenter* v. *Stillwell*, 12 id., 128; *Commonwealth* v. *Moltz*, 10 Pa. St., 527; *Eldrod* v. *Hazlett*, 33 id., 307; *Shaw* v. *Beebe*, 35 Vt., 205; *Wooly* v. *Edson*, id. 214.

The security of Loftis' debt was transferred to Jones, and he was subrogated. *Kaufman* v. *Batesville Institute*, 18 Wal., 151; Lead. C. in Eq., 400-417; *Watts* v. *Kinney*, 3 Leigh, 272; *Lowndes* v. *Chrisholm*, 2 Mc's Ch. Rep., 455; *Worthington* v. *Ferguson*, 4 Har. & John's, 522; *Gregur* v. *Bengle*, 5 ib., 234; *Neimceweicz* v. *Gahn*, 3 Paige, 614; *Epps* v. *Randolph*, 2 Cal., 125; *Hatcher* v. *Hatcher*, 1 Randolph, 53; *Williams* v. *Washington*, 3 Dev. Eq., 137.

Debt not barred. The period of the war not counted. U. S. Statute at Large, p. 811, app.; *Semmes* v. *Hartford Ins. Co.*, 13 Wal., 158; *U. S.* v. *Wiley*, 11 Wall., 508; *Hanger* v. *Abbott*, 6 Wall., 632; *The Protector*, 12 Wall., 700; *Hall* v. *Denkla*, 28 Ark., 506.

Payments revived the debts, Gould's Digest ch. 106, sec. 23; *Hunt* v. *Bridgemen*, 2 Pickering, 581; *Sigourney a. Dowry*, 14 ib., 387; *Lawrence Co.* v. *Dunkle*, 35 Mo., 375 *Whitaker* v. *Rice*, 9 Minn., 13; *Trustees* v. *Hartfield*, 5 Ark., 551; *Burr* v. *Williams*, 20 Ark., 189; *Hicks* v. *Lusk*, 19 Ark., 692; also 51 Mo.,

31.  Statute runs from date of payment provided in deed of trust *Am. Bank* v. *Baker*, 4 Met., 164.  Mortgage not barred with note.  *Belknap* v. *Gleason*, 11 Con., 160.  See also *Getchell* v. *Jewett*, 4 Greenleaf, 350; *Baker* v. *Morris*, 10 Leigh, 284; *McKinner* v. *Smith*, 2 Greenleaf, 14; *Nelson* v. *Carrington*, 4 Mumf., 332; *Reardon* v. *Searcy*, 1 Sitt., 653; *Chapman* v. *Batle*, 22 Maine, 191; *Spear* v. *Newell*, 13 Vt., 288; *Rogers* v. *Rathburn*, Johns. C. R., 367; 2 Sto. E. Ju., sec. 1521, 1028; *Bond* v. *Hopkins*, 1 Sch. and Lefr., 430-435; 2 Hilliard on Mort, 4; *Hughes* v. *Edwards*, 9 Wheat, 467; *White* v. *Ewer*, 2 Vent., 340; *Robinson* v. *Fife*, 3 Ohio (U. S.,) 551; *Crittenden* v. *Brainard*, 2 Root, 485; *Dick* v. *Batch*, 8 Pet., 30; *Davis* v. *Evans*, 5 Iredell, 525; *Giles* v. *Baremore*, 5 Johns. C. R., 545.

On limitations see further:  *Owings* v. *Norwood*, 2 Har. & Johns., 96; *Jackson* v. *Delany*, 11 Johns., 365; *Jackson* v. *Hudson*, 3 J. R., 375; *Collins* v. *Terry*, 7 Johns., 278; *Jackson* v. *Pratt*, 10 Johns., 114; *Jackson* v. *Slater*, 5 Wendell, 295; *Appleton* v. *Edon*, 8 Vermont, 241.  Presumption of payment may be overcome by counter proof:  *Evans* v. *Huffman*, 1 Halstead Ch. (N. J.), 354; *Boyd* v. *Harris*, 2 Md. Ch. 210; *Robert* v. *Welch*, 8 Ind. Eq., 287; *Whitney* v. *French*, 2 Vermont, 663; *Chich* v. *Robins*, 44 Maine, 104; *Wright* v. *Eaves*, 10 Rich. Eq. 582; *Howard* v. *Hildreth*, 18 N. H., 105; *Hughes* v. *Blackwell*, 6 Jones' Eq. (N. C.), 73; *Hicks* v. *Lusk*, 19 Ark., 692.

*Hughes & Smith*, for appellee.

On the point of limitation cited:  Gantt's Digest, sec. 4113, applies in equity to deed of trust; *Sullivan* v. *Hadley*, 16 Ark., 145; *Guthrie* v. *Field* 21 Ark., 386; *Hall* v. *Denckla*, 28 Ark., 506, Begins to run January 1, 1857; *Jett* v. *Hempstead*, 25 Ark., 462; *Grey* v. *Givens*, 26 Mo., 291; *Trapnall* v. *Burton*, 24 Ark., 389. Remedy against the land is barred, excluding time of the war,

*Met. B.* v. *Gordon,* 28 Ark., 115; 2 Brightly's Dig. Laws, 295. The cases depend wholly on exclusion from the courts. See *Hanger* v. *Abbott,* 6 Wall., 534; *The Protector,* 9 ib., 687; *Levy* v. *Stuart,* 11 ib., 244, 493; *Brown* v. *Hyatt,* 15 ib., 182.

Payments after sale could not affect Cartwright. Broom's Leg. Max., 917–18 and 926; 1 Greenl. Ev., sec. 109; note 1, sec. 180; *Gullett* v. *Lamberton,* 6 Ark., 110; *Finn* v. *Hempstead,* 24 Ark., 111; *Prater* v. *Frazier,* 11 Ark., 249; *Steinback* v. *Stewart,* 11 Wall, 566; *Pearson* v. *Hern,* 53 Ill., 144; *Weinrich* v. *Porter,* 47 Mo., 363; *Vance* v. *Smith,* 2 Heiskell, 344; *Merrill* v. *Dawson,* Hemp., 576–7. As to policy of the statute, see 1 Gr. Ev., secs. 15, 16 and 32; Angell on Lim., 397–9; *Conway* v. *Kinsworthy,* 21 Ark., 9; *Guthrie* v. *Field,* ib., 379; *Trapnall* v. *Burton,* 24 Ark., 389.

Mayo is estopped: Sto. Eq., secs. 384–85; *Shall* v. *Biscoe,* 18 Ark., 142; *Trapnall* v *Burton,* 24 Ark., 399.

WALKER, J.:

This is a suit in chancery, brought in the Monroe Circuit Court by Cartwright against Mayo and Jones, to enjoin the sale of a tract of land, bought by Cartwright of George Washington, who had, before that time, conveyed the same in trust to Mayo, one of the defendants, to secure the payment of certain notes, which Washington owed to one Loftus, and for the payment of which Mayo and Jones were bound as the securities of Washington. The case was heard upon bills, answers, exhibits and depositions, upon consideration of which the court decreed that Mayo, the trustee, be perpetually enjoined from executing his trust, and for costs.

From this decree Mayo and Jones have appealed to this court.

The main ground for equitable relief set up in this bill was the uninterrupted adverse possession of the complainant for more

than seven years, which he sets up as a bar to the sale of the land by the trustee under the trust deed.

The defendants in their answer admit the purchase and possession of the land by complainant, but deny that their right to enforce the trust is barred by limitation, upon the ground, amongst others, that the statute bar was suspended during the late war, and deducting that time, seven years had not elapsed between the time the adverse possession commenced and the time when the trustee attempted to enforce his trust.

After a careful consideration of the several allegations of complaint, the admissions of the answers, and the evidence, the facts of the case are that Washington and Baldwin, with Jones and Mayo as their security, on the —— of October, 1850, executed to Loftus two notes under seal for $1500 each, one payable 1st February, 1853, the other payable 1st February, 1854. To secure the payment of these notes, Washington, the owner and occupant of a tract of land in Monroe county, Ark., on the 8th of April, 1856, executed a deed of trust to Mayo, one of his securities on the notes to Loftus, with power to sell the land upon notice to satisfy the debts ; that the trust was accepted by Mayo, and the deed acknowledged and recorded in the recorder's office of that county on the 10th April, 1856, two days after its execution ; that Washington continued in possession of the land, cultivated the same, and appropriated the rents and profits to his own use, up to the time of his sale of the land to Cartwright.

That Cartwright, a non-resident of the State; made a verbal contract with Washington for the purchase of the land, under which Murrel, his son-in-law, as his agent, took possession in December, 1857. That Washington, for the consideration of $21,000, which was paid to him on the 1st of January, 1858, executed to Cartwright a deed with covenants of warranty of title, after which Cartwright's possession was continuous and uninterrupted until the commencement of this suit, on the 17th

December, 1868 (except a temporary absence during part of the time of the late war). That during all of the time after he entered upon the lands, he cultivated the same, and received and appropriated the rents and profits to himself; that he paid the taxes on the land as his, and made notorious and valuable improvements on it, such as clearing, fencing, building and ditching; that during all this time (except a temporary absence during the war) Mayo resided in the neighborhood of the land; that he did not apprise Cartwright of his title or claim as trustee, nor assert any claim or control over the lands, or the rents and profits, until the 31st of October, 1868, at which time he advertised the lands for sale.

Upon this state of case Cartwright contends, first, that he was an innocent purchaser for a valuable consideration, and that Mayo is estopped, by silence and acquiescence in the purchase, payment, occupancy and improvements upon the land, from setting up or asserting his claim as trustee; and, second, that Mayo is barred by lapse of time from asserting his claim to the land as trustee.

As regards the first position, we must hold that although there appears to have been no actual notice of the trust claim, and that Cartwright, a stranger in the country, finding Washington in possession of the land, with evidence of title in himself, in good faith made the purchase, and paid his money in ignorance of the existence of the trust deed; still, as the deed was of record, he is chargeable with constructive notice, and Mayo was not bound to warn him of his title. It was the carelessness and neglect of Cartwright, in not examining the records to see whether there was or not an incumbrance upon his title, the consequences of which he must bear.

The second ground assumed for complaint, presents the only serious question to be determined.

Mayo & Jones vs. Cartwright, adm'r, et al.

The defendants insist that they are not barred by the statute from enforcing their claim under the trust deed: *First*—Because Cartwright has not had seven years' peaceable, continuous, possession of the land, adverse to the rights of defendant. And *Second*—That by reason of several payments made upon the notes to secure the payment of which the deed was executed, the debts are not barred by limitation, and that whilst the debt remains due and unsatisfied, the right to enforce payment under the deed exists.

Under the first ground of defense, as to the seven years' proposition, the statute is as follows:

Sec. 2, Gould's Digest, ch. 106: "No person or persons, or their heirs, shall sue, or maintain any action or suit, either in law or equity, for any lands, tenements or hereditaments, but within seven years next after his, her, or their right to commence, have, or maintain such suit, shall have come, fallen, or accrued; and that suits, either in law or equity, for the recovery of any lands, tenements or hereditaments, shall be had, and sued, within seven years next after title, or cause of action accrued, and at no time after said seven years shall have expired. Excepting minors, *femmes covert*, and persons *non compos mentis.*"

These are the only exceptions made by the statute, nor is there anything in the language of the statute, from which, by any fair construction, any other exceptions may be inferred.

Cartwright went into possession on the 1st of January, 1858, under his purchase, and from that time until the 31st October, 1868, a period of ten years and ten months, continued in peaceable, adverse, uninterrupted possession.

To avoid the effect of this, the defendants claim that the statute bar did not run during the time between the proclamation of war by President Lincoln, on the 27th of April, 1861, and that of President Johnson at the close of the late war, on the 2d of

April, 1866, and that deducting this time from the ten years and ten months, the seven years had not expired on the 31st October, 1868. We have seen that the statute makes no such exception, and in the case of *Bennett* v. *Worthington*, 24 Ark., 487, we held that when the statute made no exception we could make none. But in a later decision of this court, *Metropolitan Bank* v. *Gordon*, the case of *Bennett* v. *Worthington* was overruled, upon the authority of *Hanger* v. *Abbott*, 6 Wallace, 631; 11 Wallace, 244, 493; and 15 Wallace, 111. In none of these decisions is there a single authority cited to sustain them. They are distinctly placed upon the ground that intercourse was prohibited between the belligerent States in time of civil war, and that as between belligerents, the international laws of war should prevail. In all of these cases, the suits, except that of *United States* v. *Wiley*, 508; and *Levy* v. *Stewart*, 244; were between the loyal States of the one party and the rebel States of the other, and fixed as the period of the statute bar, the dates of the proclamations, declaring war and that of its suspension. The ground upon which the Supreme Court of the United States extended this suspension to suits between the citizens of the rebel States was based upon an act of Congress. Since the decision of the case of the *Metropolitan Bank* v. *Gordon*, this court has applied the rule as held in that case to several cases between the citizens of this State, limiting the period of the suspension, however, to the 6th May, 1861, the date of the secession ordinance, and the close of the war April 2d, 1866.

These decisions have been so long made and acquiesced in, that we do not feel at liberty to disturb them. Nor have we made this reference to them for that purpose, but to show the true grounds upon which they rest, and that they should not be relied upon as authority for making a like exception in favor of a trustee, with power to sell upon notice. The act to be performed was personal, neither the existence nor the intervention

of a court was necessary, to enable the trustee to execute his trust.

It is no doubt true that there was a time during the war, when it would have been an abuse of the trust to have exposed the property to sale, and perhaps hazardous to the trustee personally to have attempted to do so. If we should attempt to go this step further, and engraft upon the statute this, as an additional exception to the operation of the statute, it may with equal propriety be extended to all other personal trusts.

Mayo, the trustee, had ample time, both before and after the war, to execute this trust. He could have done so at his pleasure, or if Jones, who seems also to have been interested in the execution of the trust, had desired that it should be executed, he could have compelled Mayo to do so or to resign.

We have already gone as far, under the sanction of the decisions of the Supreme Court of the United States, as we feel authorized to go, and particularly when the circumstances which induced the courts to make this exception, do but partially, if at all, exist in this case, and must hold that in this case the statute bar was not suspended by reason of the rebellion: and as no steps were taken by the trustee to assert his rights to the land for more than ten years, during all which time the complainant held continued, peaceable and adverse possession of the land, had made lasting and valuable improvements upon it, and cultivated it, and appropriated the profits of the cultivation to his own use, that the statute bar was complete.

It is further contended by counsel for defendants, that the debts that were secured to be paid by the deed of trust were not barred by limitation, because of several payments made by Washington upon them, up to and as late as the year 1862.

The proof very clearly shows this to have been the case, and by force of which a new point was fixed from which the statute

began to run, and counsel are well sustained by authority in the position taken by them, in cases in which payments are made by the payor to the payee, as in case where a party indebted mortgages his estate to pay the debt, each payment so made as between them, is in effect an acknowledgement of the debt, and fixes a new point from which the statute bar commences; and a mortgage given to secure its payment survives with the debt. This is so as between debtor and creditor, because as between them there is privity of contract.

But no such privity existed between Cartwright and the payors of the debt. He held the land by purchase. These debts were between Washington, and Mayo and Jones, who had succeeded by payment to the rights of Loftus. Each payment made by Washington to them was a new acknowledgment of indebtedness, as to which Cartwright was not a party, and if by such acknowledgment the trust survived so as to prevent the statute bar, then by the annual payment of the interest the debt would never be barred, and if the effect be such as contended for by counsel, no length of peaceable, adverse possession, would create a bar in favor of Cartwright.

In the case of the *New York Life Insurance and Trust Co.* v. *Covert, et al.*, 29 Barber, 435, it was held that presumption of payment is not like an actual payment, which satisfies the debt as to all debtors; it operates as a payment only in favor of the party entitled to the benefit of the presumption. And further, that the presumption of the payment of a mortgage arising from the lapse of over twenty years from the time the mortgage money became due, will not be repelled by proof of a payment made by the mortgagor after he had sold and conveyed the mortgaged premises to another person, so far as the purchaser and those claiming under him are concerned. And so in the case before us. No payment made by Washington, to his creditors, after he

sold the land to Cartwright, can affect his rights, although as between Washington and his creditors it might prevent the statute bar of the debt.

1 Greenleaf, sec. 180, says: "The declarations or admissions must be made while the party making them had some interest in the matter; and they are receivable, only, in evidence so far as his own interests are concerned. * * * But an admission made after other persons have acquired separate rights in the subject matter, cannot be received to disparage their title, however it may affect that of the declarant himself."

And so Washington's admission of the existence of a debt, though binding as between himself and creditors, cannot be received to disparage the right of Cartwright.

Cartwright had nothing whatever to do with the trust deed, or the debt to be secured, he was no party to either, and we think it very clear that such payment in no wise affected his right of bar by lapse of time.

Holding, as we must, that the statute bar is complete, the decree of the court below must be in all things affirmed.