AUSTIN *v.* STEELE.

Opinion delivered July 21, 1900.

MORTGAGE—LIMITATION.—The statute providing that payments on a mortgage debt shall not operate to revive the debt, so far as the rights of third parties are affected, unless the mortgagee "shall, prior to the expiration of the period of the statute of limitation, indorse a memorandum of such payment with date thereof on the margin of the record where such instrument is recorded" (Sand. & H. Dig., § 5094) does not apply where the mortgage debt is kept alive by subsequent written agreement. (Page 353.)

Appeal from Benton Circuit Court in Chancery.

EDWARD S. McDANIEL, Judge.

STATEMENT BY THE COURT.

On the 6th day of January, 1897, appellee brought this suit on the chancery side of the Benton county circuit court against appellant, W. H. Austin, and others.

The material allegations of the complaint are that on the 18th day of July, 1882, Baker Phoenix, being the owner of the following-described real estate situated in Benton county, Arkansas, to-wit, the southeast quarter of southeast quarter

of section 21, and southwest quarter of southwest quarter of section 22, and the northwest quarter of the northwest quarter of section 27, and the northeast quarter of the northeast quarter of section 28, all in township 20 north, range 33 west (160 acres), by deed of trust conveyed the same to Henry C. Wilson, in trust to secure the payment to W. F. Leonard of the sum of $300 borrowed from him by Baker Phoenix, and due and payable on the 1st day of August, 1887, or five years after date. That the trust deed was properly executed, and recorded in the office of the recorder of Benton county, Arkansas, on the 26th day of July, 1882. That on a blank date Leonard, for a valuable consideration, sold and assigned the $300 note and unpaid interest coupons to appellee, Stelle, without recourse, and that he was the owner of the note and unpaid interest coupons. That on the 20th day of October, 1883, Baker Phoenix, joined by his wife, sold and conveyed to D. B. Eichinger 80 acres of said real estate, described as follows: The southeast quarter of southeast quarter of section 21, and the northeast quarter of northeast quarter of section 28, in township 20 north, range 33 west; and Eichinger's deed therefor was duly recorded in the office of the recorder of Benton county, Arkansas, on the —— day of ———, 1883. That through a succession of conveyances from Eichinger the last described 80 acres had been conveyed to appellant. That the remaining 80 acres, described as the southwest quarter of southwest quarter, section 22, and the northwest quarter of northwest quarter, section 27, township 20 north, range 33 west, was on the 8th day of June, 1890, by Baker Phoenix, joined by his wife, sold and conveyed to Emily Halpin, and her deed was properly executed and recorded in the office of the recorder of Benton county, Arkansas, on the 31st day of January, 1896. That on the 29th day of January, 1896, Emily Halpin sold and conveyed the 80-acre tract of said land owned by her to appellant, W. H. Austin, and the deed therefor was duly recorded in the office of the recorder of Benton county, Arkansas, on the 31st day of January, 1896, and appellant entered into possession of the land, and was so at the institution of this suit. On the 11th day of July, 1887, said indebtedness remaining

unpaid, by an agreement entered into between Baker Phoenix and W. F. Leonard (payee and owner of the note) the time of the payment of same was extended five years, or until August 1, 1892. That thereafter, and on the 1st day of August, 1892, said note still remaining unpaid, by an agreement entered into between W. F. Leonard (as payee and owner of the note) and one W. T. McAnally, the time for the payment of said note was extended from August 1, 1892, to August 1, 1897. That by the terms of said note, if default was made in the payment of any of the installments of interest when due, the said mortgagee should have the right to declare the principle and all unpaid installments of interest due, and that such default had been made in the payment of the installment of interest due August 1, 1896, and that appellee, Steele, had elected to declare the whole amount due. That Baker Phoenix, on a blank day, in Benton county, Arkansas, died intestate, and no administration on his estate had been had, and none was necessary, and that J. B. Phoenix and M. J. Halpin were his sole heirs at law. In consideration of the foregoing allegations, plaintiff prays judgment on note for amount due and foreclosure of defendant's equity of redemption, and other proper relief.

On the 18th day of March, 1897, appellant demurred to the complaint for the following causes: (1) Because of the laches of appellee and his assignor. (2) Because of the failure of the appellee and his assignor to comply with the act of the general assembly prescribing the manner of continuing in force mortgages and deeds of trust, approved March 25, 1889. (3) Because the extension agreements mentioned in the complaint were not made by any one having an interest in the property affected by such agreements. (4) Because of failure to set forth facts sufficient to entitle the appellee to the relief prayed for.

On the 8th day of April, 1897, appellant filed his answer and cross bill, admitting Baker Phoenix owned the lands mentioned in the complaint in 1882, and that he executed the note and trust deed for the purposes mentioned in the complaint, and disclaimed sufficient knowledge of the ownership of the note to

form or authorize a belief. It is also admitted that in 1883 Baker Phoenix sold and conveyed 80 acres of the land, and in 1890 he sold and conveyed the remaining 80 acres of the tract, and that through his successive grantees appellant acquired his title to the entire tract of 160 acres; and before the complaint herein was filed, and by way of new and affirmative matter, appellant alleges that he purchased the lands for a valuable consideration and in good faith; that prior to purchasing the same he examined the records affecting the titles to the lands, and no credits or payments on the note and trust deed have been entered on the margin of the record thereof, as required by the act of the general assembly, approved March 25, 1889, or otherwise. Said act is specially pleaded in bar of the appellee's right to a foreclosure of the trust deed. That the original transaction was usurious. That the note and trust deed were void and a cloud on appellant's title. That the extension agreement made by Baker Phoenix in 1887 was neither acknowledged nor recorded, and at that time he had conveyed the southeast quarter of southeast quarter of section 21, and the northeast quarter of northeast quarter of section 28, township 20 north, range 3C west, and mentioned in the complaint, and had no rights *in re* or *ad rem*, and the agreement was of no binding force as to any of the lands. That McAnally was not a party to either the note or trust deed, and that the extension agreement made by him in 1892 was neither acknowledged nor recorded, and that he was a stranger to the title of the southwest quarter of southwest quarter, section 22, and northwest quarter of northwest quarter, section 27, township 20 north, range 33 west, described in the trust deed, and the agreement executed by him was of no binding force. That appellee's alleged cause of action was stale, and outlawed by the general law of limitation; and prays for cancellation of the trust deed.

Appellee demurred upon the grounds that the facts set forth in the answer, if true, were insufficient to constitute a defense to the complaint, and also answered denying usury and the assumption of the debt by McAnally.

The hearing of the case in the court below resulted in a decree of foreclosure, for the reversal of which this appeal is prosecuted.

*J. A. Rice* and *C. M. Rice*, for appellant.

Under the act of 1889 (Sand. & H. Dig., §§ 5094–5), the debt and the right to foreclose, as against third parties at least, was barred at the end of five years. There is no agreement legally sufficient, under the above act, to extend the time, so as to affect the rights of third parties. An agreement to extend the time of payment, not executed and recorded as required by law, is at most a personal obligation between the parties, and does not bind the property or subsequent purchasers. 1 Jones, Mort. §§ 564, 578; 42 Cal. 493; 36 Cal. 11; 26 Cal. 361; 56 Cal. 342. McAnally's agreement was void as to the eighty in sections 21 and 28. The bar was complete before he made his extension, and his agreement could not revive the mortgage against the mortgagor's grantees. 18 Kas. 104; 2 Jones, Mort. §§ 1195, 1198; 18 Cal. 482, 490; 83 Mo. 35; 34 Ia. 380; 13 Am. & Eng. Enc. Law, 760; 18 Cal. 342; 56 Cal. 342. Appellant had a right to rely upon the record required to be kept by the act of 1889, and he is, to all intents and purposes, an innocent purchaser. Pingrey, Mort. §§ 1575, 1753. The beneficiary of a trust can not maintain a suit such as this about the trust property. The demurrer should have been sustained. 2 Jones, Mort. § 1384; Sand. & H. Dig., § 5626; 17 Am. & Eng. Enc. Law, 505; Bliss, Code Pl. §§ 54, 55, 58; Story, Eq. § 75; 3 Ark. 364; 27 Ark. 235; 32 Ark. 297, 302.

*E. P. Watson*, for appellee.

The act of 1889 applies only to those cases wherein the plaintiff seeks to revive the debt by showing payments. The act is not retrospective, and so does not apply to the agreement of 1887. Nor does the second section of the act apply to this case. 63 Ark. 573. The mortgage was a lien on the land as long as the debt was a valid and subsisting one. Sand. & H. Dig., § 5094. The question as to the trustee being a party was not raised below, and cannot now be raised. 30 Ark. 399; 54 Ark. 525; 3 Met. 137; 33 Ark. 497. The deed was in reality a mortgage. 31 Ark. 429; 53 Ark. 545; 54 Ark. 179; Jones, Mort. §§ 62, 1769. Hence the transfer of the debt

carries with it the mortgage.   Jones, Mort. §§ 817, 820, 1146; Pom. Eq. Jur. § 2310.

HUGHES, J., (after stating the facts.)   Prior to the passage of the act of March 15, 1889 (Sandels & Hill's Digest, §§ 5094, 5095), the limitation of actions to foreclose mortgages or deeds in trust upon real estate was seven years, the period allowed by the statute within which to bring ejectment for the possession of the land.   Section 4815, Sandels & Hill's Digest, as to limitation of right to bring ejectment (act of January, 1851).   "Seven years continuous adverse possession against the mortgagee will bar his action for the recovery of the mortgaged premises, or for foreclosure of the mortgage; but to constitute adverse possession against a mortgagee it is not sufficient that the mortgagor, or those holding under him, occupy, use, improve and pay taxes on the premises as their own absolute property, but the possession must be in open denial of the mortgagee's title, and accompanied with such acts or declarations of the holders as are sufficient to put the mortgagee on notice that they claim and hold in hostility to his rights, and adversely to him.   Until then the possession is consistent with his rights, and not adverse, and the statute does not begin to run."   *Ringo* v. *Woodruff*, 43 Ark. 469; *Whittington* v. *Flint*, 43 Ark. 504.   This statute as to the question of limitation of the right to bring this action controlled until the passage of the act of March 15, 1889, which provided that "in suits to foreclose or enforce mortgages or deeds of trust it shall be sufficient that they have not been brought within the period of limitation prescribed by law for a suit on the debt or liability for the security of which they were given, etc."   Actions on promissory notes not under seal are barred if not brought within five years after the cause of action shall accrue.   Section 4827, Sandels & Hill's Digest.

The debt in this case was evidenced by a promissory note due on the 1st of August, 1887, secured by a trust deed upon the lands in controversy, and bearing date 13th of July, 1882, in which deed of trust there was an express covenant to pay said debt.   This trust deed was properly acknowledged and recorded on the 26th day of July, 1882, in the office of the

clerk and recorder of Benton county, in which county said lands are situate. The note was assigned by Leonard, the payee, to the appellee, Steele, without recourse. On 20th October, 1883, Phoenix and wife conveyed of said real estate to Eichinger the southeast quarter of the southeast quarter of section 21, and the northeast quarter of the northeast quarter of section 28, in the aggregate 80 acres, in township 20 north, range 33 west. This piece was afterwards conveyed to the appellant, Austin.

The other 80 acres, the southwest quarter of the southwest quarter of section 22, and the northwest quarter of the northwest quarter of section 27, township 20 north, range 33 west, was, on the 8th of June, 1890, conveyed by Baker Phoenix and wife to Emily Halpin, to whom a properly executed and acknowledged deed was made on the 8th day of June, 1890, which was duly recorded in the office of the recorder of Benton county on the 31st of January, 1896. On the 29th of January, 1896, Emily Halpin conveyed the same tract to appellant, Austin, and on 31st January, 1896, the deed to him therefor was recorded in the office of the recorder of Benton county, and the appellant entered into possession of the land, and was in possession thereof when this suit was commenced. This possession was, however, not adverse.

On the 11th day of July, 1887, before the debt secured was due, and before the statute had begun to run, and the debt being unpaid, by an agreement in writing between Baker Phoenix and W. F. Leonard, the payee and owner of the note, the time for the payment of the same was extended five years, or until the 1st of August, 1892. This made the date at which the right of action would have been barred after the 1st of August, 1897, and this suit was brought on the 6th of January, 1897, nearly seven months before the right of action to foreclose the mortgage was barred.

We need not, therefore, notice the extension of the time of payment, made by Leonard at the instance of McAnally. It is true the extension of the time of payment made by agreement between Phoenix and Leonard was made after Phoenix had sold one 80 acres of the land, but Phoenix was liable to pay the

note at the time of the extension of payment, and the purchasers from Phoenix had constructive notice of the mortgage on record, and in contemplation of law bought subject to it; in other words, bought only the equity of redemption. *Barrett* v. *Prentiss*, 57 Vt. 300; *Hughes* v. *Edwards*, 9 Wheaton (U. S.) 489, 498. His grantees could stand in no better condition than Phoenix himself. *Hughes* v.*Edwards*, 9 Wheaton, 489.

The statute requiring indorsement of payment on the record to prevent the bar of the statute does not apply. The mortgage was kept alive by written agreement, and in fact the covenant in the mortgage was not barred until 1897, the period of limitation on that covenant being ten years, it being a covenant in the mortgage under seal to pay the debt.

The decree is in all things affirmed.